## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DAIRWOOD VEREEN,** | : | |
| **Plaintiff,** | : | |
| | : | **No. 3:17-CV-1509 (VLB)** |
| **v.** | : | |
| | : | |
| **CITY OF NEW HAVEN,** | : | **November 20, 2018** |
| **Defendant.** | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION ON MOTIONS *IN LIMINE*

## I.      Background

Before the Court are the parties' Motions *in Limine*.  [Dkts. 54 through 63 (Defendant's Motions); Dkt. 66 (Plaintiff's Motion)].  Plaintiff, an African-American man, alleges that he was that racial harassment created a hostile work environment for him in the City of New Haven Department of Public Works ("DPW" or the "Department"). *See* [Dkt. 76 (Amended Complaint)].  Plaintiff further alleges that employees at the DPW subjected him to disciplinary action as retaliation for Plaintiff's filing of a complaint about the discrimination. *Id.* at 11-13.

Plaintiff seeks to preclude six categories of evidence: (a) Evidence relating to Plaintiff's employment history (Defendant's Exhibits E-G, J-U, Q-Y, CC, GG-VV, AAA-KKK); (b) Evidence relating to the City of New Haven extending Plaintiff's probationary period in 2004,  Plaintiff's termination after he was hired, and Plaintiff's reinstatement (Defendant's Exhibits Z, AA, BB, DD, EE); (c) Letter from the Department of Public Works Director of Operations to Plaintiff discussing

street sweeper training; (d) Evidence of discipline from the Department sent to 27 employees for the period of 2013-2016 (Defendant's Exhibit LLL); (e) Cell phone footage captured by Honda Smith (Defendant's Exhibit RRR); and (f) Impeachment evidence consisting of Plaintiff's prior specific acts of misconduct.

Defendant files motions to preclude nine categories of evidence: (a) Testimony Regarding Paragraph 25 of the Amended Complaint [Dkt. 54]; (b) Testimony Regarding Various "Stray Remarks" [Dkt. 56]; (c) Facebook posts made by co-workers [Dkt. 57];   (d) Testimony regarding time-barred allegations concerning conduct that occurred before May 2, 2015 [Dkt. 58]; (e) Expert testimony [Dkt. 59]; (f) Testimony regarding Paragraph 26 of the Amended Complaint (conduct while plaintiff was on medical leave) [Dkt. 60]; (g) City of New Haven Affirmative Action Plan [Dkt. 61]; (h) the Equal Opportunity Employment Commission (EEOC) Supervisory Liability Guidelines [Dkt. 62]; and (i) Materials related to other claims of discrimination [Dkt. 63].

The Court examines both parties' motions in turn.

II.    <u>Legal Standard</u>

The purpose of a motion *in limine* is to "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieiri v. Defaria*, 88 F.3d 136, 141 (2d. Cir. 1996). Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. *Levinson v. Westport Nat'l Bank,* No. 3:09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. 2013). A court's ruling

regarding a motion *in limine* "is subject to change when the case unfolds . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Palmieiri* 88 F.3d at 139 (quoting *Luce v. United States,* 469 U.S. 38, 41-42 (1984)).

III.  **Plaintiff's Motions *in Limine***

a.  **Motion to Preclude Evidence Pertaining to Plaintiff's Employment and Disciplinary History (Defendant's Exs. E-G, J-U, Q-Y, CC, GG-VV, AAA-KKK)**

Plaintiff moves to preclude Defendant from introducing documents relating to the Plaintiff's work history and disciplinary record.  [Dkt. 66-1, at 1; *see* Defendant's Exhibits E-G, J-U, Q-Y, CC, GG-VV, AAA-KKK].  Plaintiff argues that these documents are not relevant under Fed. R. Evid. 401 and that "defendants misrepresent the magnitude and significance of, as well as the context, of the prior disciplinary actions."  [*Id.* at 1-2].  Plaintiff argues that, to the extent these documents have any probative value, it is outweighed by the risk of substantial prejudice.  [*Id.* at 3].  Plaintiff also argues that the documents are hearsay because the "letters of reprimand do not have the indicia of trustworthiness that would justify its admission as a hearsay exception."  [*Id.* at 2]. Finally, Plaintiff argues that these materials are improper character evidence under Fed. R. Evid. 404.  [*Id.* at 3].

Defendant responds that evidence of Plaintiff's work history is relevant to Plaintiff's allegation that DPW retaliated against Plaintiff after Plaintiff filed a complaint about his work environment.  [Dkt. 70 (Defendant's Objection to Plaintiff's Motion *in Limine*)].  Defendant argues that the documents are

admissible as an exception to the hearsay rule under the Fed. R. Evid. 803(6) exceptions for business records. [*Id.* at 4]. Furthermore, Defendant argues that the documents are not improper character evidence because they are not being offered as "prior bad acts" to show a trait of character. [*Id.* at 2]. Rather, Defendant claims to offer the materials to rebut Plaintiff's claim for retaliation by showing that Defendant had legitimate business reasons for suspending Plaintiff and docking his pay. [*Id.*]

The Court turns first to relevance. The documents are relevant because Plaintiff makes claims for retaliation in violation of Connecticut law and Title VII. *See* [Dkt. 76 (Amended Complaint) at 11-13]. Evidence is relevant in an action if it "makes any fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. Plaintiff's claim of retaliation requires showing that the plaintiff suffered a "materially adverse" employment action because he complained that his work environment was hostile. *See Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Title VII establishes the standard for retaliation under the Civil Rights Act:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter.

Civil Rights Act of 1964, Title VII § 704(a). Connecticut's employment discrimination statute contains a similar provision:

> It shall be a discriminatory practice in violation of this section . . . For any…employer…to discharge, expel, or otherwise discriminate against any person because such person has opposed any discriminatory employment

practice or because such person has filed a complaint or testified or assisted in any proceeding under [this statute].

Conn. Gen. Stats. §46a-60(b)(4).  Once an employee makes a *prima facie* case for retaliation, the burden falls on the employer to "articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).  Evidence of Plaintiff's work history is highly probative of whether Defendant had a legitimate, non-retaliatory reason for suspending Plaintiff.  Plaintiff's concerns regarding the magnitude and context of disciplinary infractions are concerns about the weight of the evidence, not its admissibility.

Plaintiff also argues that these employment records are inadmissible hearsay.  In response, Defendant argues that these documents are admissible under the hearsay exception for records of regularly conducted activity.  Fed. R. Evid. 803(6).  Plaintiff does not appear to challenge their status as records of regularly conducted activity, or, indeed, does not specifically address any hearsay exception, but rather appears to argue that the materials should be precluded by the Confrontation Clause.  Plaintiff argues that the documents "do not show whether there was ever a full and fair opportunity to present evidence and argument" and that they "do not have the indicia of trustworthiness that would justify their admission as a hearsay exception."  [Dkt. 66, at 3].

Plaintiff cites no credible legal authority for his assertion that these records of regularly conducted activity business should not be admitted and thus his objection fails.  The Confrontation Clause does not apply to this civil case.  *See* U.S. Const. amend. VI.  Plaintiff's "indicia of trustworthiness" language may be

intended to address the requirement that evidence can only be admitted under hearsay exceptions 801(6)- (8) if "the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness." *See* Fed. R. Evid. 803(6)-(8). If that is Plaintiff's intent, Plaintiff's argument fails because he has provided the Court no basis to find a lack of trustworthiness. *See Ariza v. City of New York,* 139 F.3d 132, 134 (2d. Cir. 1998) (holding that "the party opposing admission of evidence under [Rule 803(8)] has the burden of showing untrustworthiness."). Defendant asserts that Department of Public Works employees Jeffrey Pescosolido and Lynwood Dorsey will testify regarding the veracity of these records. [Dkt. 70, at 2]. Any doubts about their trustworthiness can be explored through testimony. The Court will allow Defendant to lay the proper foundation for these documents.

Plaintiff also argues that these documents are inadmissible as improper character evidence. [Dkt. 66-1, at 3-4]. The Court rejects this argument. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Defendant will not offer this evidence to show that Plaintiff acted in conformity with a particular character trait. Rather, Defendant claims to offer these records "to establish the steps DPW took to respond to Plaintiff's workplace conduct." [Dkt. 70, at 2]. Plaintiff opened the door to this evidence by bringing a claim for retaliation, which allows that Defendant may provide a "legitimate, non-retaliatory reason" for suspending Plaintiff. *See Jute*, 420 F.3d at 173.

Finally, Plaintiff argues that this evidence is inadmissible under Fed. R. Evid. 403 because it will confuse the jury and waste the Court's time. The Court declines to make this finding, recognizing that there may be an efficient and clear way for Defendant to introduce this evidence. Plaintiff will be free to provide the context for these documents through examination.

Accordingly, Plaintiff's first Motion *in Limine* to preclude Defendant's Exhibits E-G, J-U, Q-Y, CC, GG-VV, and AAA-KKK is DENIED. If, during the trial, it becomes apparent that Defendant is presenting the evidence for an improper purpose or in a confusing manner, the Court will consider revisiting this ruling.

    **b.**  <u>Motion to Preclude Evidence Related to the City of New Haven extending Plaintiff's Probationary Period in 2004, His Termination, and His Reinstatement (Defendant's Exs. Z, AA, BB, and DD)</u>

The Motion to Preclude Defendant's Exs. Z, AA, BB, and DD is GRANTED on consent as Defendant notes that Plaintiff has agreed not to submit evidence relating to his 2005 termination. [Dkt. 70, at 3].

    **c.**  <u>Motion to Preclude Letter Regarding Street Sweeper Training (Defendant's Ex. FF)</u>

Plaintiff moves to preclude Defendant's Exhibit FF, a letter from DPW Director of Operations Jeffrey Pescosolido to Plaintiff regarding street sweeper training, on the grounds that it is "hearsay, is irrelevant, and would cause confusion and waste of time." [Dkt. 66, at 7]. The letter states that Vereen "will (as agreed) receive training as available, assigned by Departmental Supervisor's [*sic*] based on Union agreements, daily activities, equipment and staffing requirements." Defendant's Exhibit FF. Defendant argues that the letter will be offered to rebut

Plaintiff's anticipated assertion that he was not given opportunities for street sweeper training. [Dkt. 70, at 4].

The Court declines to exclude the letter because it is unable to determine the relevance of the letter at this time. If Plaintiff makes no claim that he was denied the opportunity for street sweeper training, the relevance of the letter will be difficult to establish. If Plaintiff does testify that he was not given opportunities for street sweeper training, the letter would certainly be relevant to rebut that assertion. In that case, the letter may be admissible as a business record under Fed. R. Evid. 803(6).

Therefore, Plaintiff's Motion *in Limine* to Preclude Defendant's Exhibit FF is DENIED. The Court will consider revisiting this ruling at trial if a dispute arises.

### d. <u>Motion to Exclude Materials Related to Discipline Given to Other DPW Employees (Defendant's Exhibit LLL)</u>

Plaintiff seeks to exclude Exhibit LLL, which compiles letters of discipline sent to 27 DPW employees for the period of 2013-16, on the grounds that the evidence is irrelevant, is hearsay, is improper character evidence, and is unfairly prejudicial. [Dkt. 66-1, at 8-11]. Defendant argues that Exhibit LLL "demonstrates that the Defendants investigate policy violations for all DPW employees." [Dkt. 70, at 4]. Defendant explains that "it is anticipated that Plaintiff will claim that he was treated differently from other DPW employees." [*Id.*]. Defendant argues that the materials are admissible under the records of regularly conducted activity business exception to the hearsay rule. [*Id.* at 5].

Letters of discipline sent to other employees are not relevant to Plaintiff's claims or Defendant's defenses. Plaintiff makes claims under state and federal law of: 1) a hostile work environment due to discrimination on the basis of his race and 2) retaliation for his complaint about the work environment. [Dkt. 76, ¶¶ 50-68]. The alleged discrimination concerns remarks made by Plaintiff's supervisor and coworkers and the City's failure to respond to those remarks. Plaintiff does not allege that he was disciplined differently because of his race. The materials, therefore, are not relevant to Plaintiff's hostile work environment claims.

The materials are also not relevant to Plaintiff's retaliation claim. The only conceivable argument for utilizing this evidence to rebut the retaliation claim would be to assert that because DPW disciplined other employees for violation of DPW policies, Plaintiff's discipline was appropriate. This is a tenuous link. The fact that other employees were disciplined has no probative value absent a claim from Plaintiff that similarly situated individuals were treated differently. Records of discipline for other employees will not aid a jury in deciding whether Plaintiff was treated fairly. Defendant can present evidence of DPW policy and evidence that Plaintiff violated DPW policy. Defendant's witnesses can even testify that they handled Plaintiff's discipline in the same way they would handle discipline for any employee. However, presenting written evidence of disciplinary actions against other employees is unnecessary unless Plaintiff argues that the disciplinary reasons given for his suspension were pretextual.

Accordingly, Plaintiff's Motion *in Limine* to exclude Defendant's Exhibit LLL is GRANTED. If Plaintiff does, in fact, testify that he was unfairly targeted for discipline when other employees were not, Defendant's Exhibit LLL may be relevant. The Court encourages Defendant's counsel to raise the issue if appropriate.

### e. Motion to Preclude Cell Phone Video Footage (Defendant's Exhibit RRR)

Plaintiff seeks to preclude the introduction of Exhibit RRR, a video allegedly recorded by Plaintiff's co-worker Honda Smith. [Dkt. 66, at 11-13]. Defendant asserts that the video shows Plaintiff making "vulgar and obscene" comments towards women in the presence of female co-worker Smith. [*Id.* at 6]. Plaintiff argues that the video has no probative value, that it is improper character evidence, and that the video is unfairly prejudicial to Plaintiff. [*Id.*] Defendant argues that the video is relevant because in order for Plaintiff to sustain his claim for a hostile work environment, he must prove that he found the conduct at issue "to be undesirable or offensive, and that he did not participate in the conduct himself." [Dkt. 70, at 5]. Defendant alleges that Plaintiff's behavior in the video could lead a reasonable jury to determine that Plaintiff contributed to a "rowdy and coarse atmosphere" among DPW employees. [*Id.* at 6]. Defendant explains that Plaintiff's objection to the video

…is ironic considering that he is attempting to introduce statements made to other co-workers, outside of his presence, that impact *religion* and *ethnicity* but takes his own offensive conduct *toward women* off the table simply because it involves sex not race.

[*Id.*]

To sustain a claim for a hostile work environment, Plaintiff must show that he "subjectively perceive[d] the environment to be abusive." *Harris*, 510 U.S. 17 at 21. Whether an environment is hostile "can be determined only by looking at all the circumstances." *Id.* at 23. The conduct at issue in an employment discrimination claim "must be unwelcome in that the plaintiff neither solicited it nor invited it and regarded the conduct as undesirable or offensive." *Scusa v. Nestle U.S.A. Company, Inc.,* 181 F.3d 958, 966 (8th Cir. 1999). *See Reed v. Shepard*, 939 F.2d 484, 492 (7th Cir. 1991)(affirming the trial court's holding that a plaintiff's claim for sexual harassment failed because evidence at trial showed that the plaintiff preferred to interact with her coworkers by making sexually explicit jokes and offers); *Erps v. West Virginia Human Rights Com'n*, 680 S.E.2d 371, 379-80 (W.V. 2009) (holding that "a plaintiff who initially participates in the allegedly hostile conduct cannot satisfy the "unwelcomeness" prong of a hostile work environment claim . . . unless evidence is produced that at some point the plaintiff made clear to co-workers and superiors that such conduct would, in the future, be considered unwelcome and the conduct continued thereafter."). The Supreme Court recognizes that principles of examining sexual harassment claims are equally germane to racial harassment claims. *See Faragher v. Boca Raton,* 524 U.S. 775, 786-87 (1998).

The video proffered by Defendant does not show that Vereen "solicited or invited" racial harassment. The video appears to show Plaintiff telling a sexually explicit story in the presence of Honda Smith and other coworkers. Defendant fails to show a nexus between Plaintiff's language and the alleged racial

harassment Plaintiff pleads. Defendant cites no law supporting the premise that making comments that are offensive to one group of individuals invites or solicits comments that are offensive to another group.

The present scenario is distinguishable from the cases Defendant cites. In *Meritor Savings Bank, F.S.B. v. Vinson*, 477 U.S. 57 (1986), cited in Dkt. 70 at 6, evidence was introduced that the plaintiff made comments and acted in a way that could be construed as inviting her supervisor to have a sexual relationship with her. *See Meritor*, 477 U.S. at 68 ("While 'voluntariness' in the sense of consent is not a defense to such a claim, it does not follow that a complainant's sexually provocative speech or dress is irrelevant as a matter of law in determining whether he or she found particular sexual advances unwelcome.").[1] In other words, the plaintiff's sexually charged actions in *Meritor* were clearly relevant in discerning her subjective view of the sexual advances made by her supervisor. In contrast, Vereen's vulgar discussion does not assist a jury in determining whether he invited or solicited racially discriminatory comments.

Defendant also cites a hostile work environment case in which the court found that an employee failed to show that his coworker's use of a racial slur was "unwelcome" because the complainant also directed racial slurs at his coworker

---

[1] The Supreme Court clarified that its holding that a plaintiff's sexually provocative speech or dress is relevant to determine whether sexual harassment was "unwelcome" does not imply that plaintiffs are required to prove that their participation in unwelcome sexual activity is not "voluntary." *See Meritor*, 477 U.S. at 68. *See also Karibian v Columbia University*, 14 F.3d 773, 779 (2d. Cir. 1994) ("While the employee's submission to the supervisor's advances is certainly relevant, it bears only on the issue whether the sexual advances were unwelcome, not whether the unwelcome sexual advances were unlawful.").

and mocked his coworker's speech impediment.  *See Erps,* 680 S.E.2d 371 (W.V. 2009).  Unlike the present case, the defendant in *Erps* offered evidence that the complainant engaged in the exact behavior about which he complained.  The evidence at trial showed that the complainant referred to his coworker as "honky" and "white trash."  *Id.* at 383.  The racial slurs directed at the complainant were a direct response – in the same conversation – to the complainant's racially-charged language.  *Erps* at 383-84 ("[I]t was Mr. Peoples who in fact first sparked the working environment with his racially-based taunting of Mr. Bragg.  Mr. Bragg thereafter responded with one sentence[] containing both a racial slur and a threat of physical violence[.]). In addition, the *Erps* court noted that the basis for the case involved "only one relatively brief exchange found to have been instigated by [the complainant]."  *Id.* at 384.

*Erps, Meritor*, and other precedent stand for the proposition that an employee cannot recover under a Title VII claim for conduct which the employee clearly invited or instigated. These cases do not support the broad proposition that defendants may offer any and all evidence of a plaintiff's offensive workplace behavior in order to rebut the plaintiff's claim that racial harassment was unwelcome.  Defendant's video does not appear to depict conduct which a reasonable jury could construe as "inviting" or "soliciting" racially-charged language or jokes.

Accordingly, Plaintiff's Motion *in Limine* to exclude Defendant's Exhibit RRR is GRANTED.

### f.   Preclusion of Impeachment by Prior Specific Acts of Misconduct

Plaintiff seeks to preclude Defendant from impeaching Plaintiff using "evidence concerning Mr. Vereen's disciplinary history or alleged problems he may have had with colleagues, or exhibits referring to his discipline history." [Dkt. 66-1, at 13]. Plaintiff argues that this evidence is inadmissible character evidence under Fed R. Evid. 404(a)(1), or, in the alternative, that it is substantially more prejudicial than probative. [*Id.*].

The Court is unable to rule on this issue without context. Plaintiff identifies no proffered evidence for the Court to examine. Plaintiff may object to the hypothetical evidence at issue in this category if Defendant introduces such evidence at trial, and the Court will rule based on the Federal Rules of Evidence.

Plaintiff also asks the Court to "direct defendants' counsel to identify in advance any additional prior alleged misconduct that they intend to cross-examine on for impeachment purposes, to avoid unfair prejudice." [*Id.* at 14]. The Court cannot conceive of how Plaintiff could be unfairly prejudiced by the introduction of evidence about Plaintiff's own conduct and which he had the ability to discover.

Plaintiff's Motion *in Limine* to Preclude Impeachment by Prior Specific Acts of Misconduct is DENIED.

IV. **Defendant's Motions _in Limine_**

a. **Motion to Preclude Testimony Re: Paragraph 25 of the Amended Complaint [Dkt. 54]**

Defendant seeks to preclude "testimony about conduct which occurred outside of the workplace, as referenced in Paragraph 25 of Plaintiff's Amended Complaint." [Dkt. 54, at 1]. Specifically, Defendant seeks to preclude a statement allegedly made by former defendant Edward D'Angelo.[2] Plaintiff alleges that D'Angelo told him "I usually don't let more than one black person in my house" when Plaintiff and Plaintiff's brother went to D'Angelo's house to buy D'Angelo's motorcycle. [Dkt. 76, ¶ 25]. Defendant argues that evidence related to this statement is the type of conduct outside of the workplace which courts preclude from claims for hostile work environment. [Dkt. 55, at 2-3].

Plaintiff responds that this information is admissible because it is not being introduced as part of the hostile work environment, but rather as evidence of D'Angelo's "racial bias." [Dkt. 71 (Plaintiff's Opposition to Defendants' Motions _in Limine_), at 3]. Plaintiff contends that "a reasonable jury may infer that the same hostility that caused the race-based comments also motivated other abusive comments" in the workplace. [Dkt. 71, at 4].

This evidence is admissible as relevant to the subjective element of a hostile work environment claim under Title VII. In addition to showing "an objectively

_____

[2] Plaintiff voluntarily dismissed all individual defendants following the filing of these Motions _in Limine_. _See_ [Dkt. 78]. Therefore, although the motions were originally filed on behalf of several defendants, the Court's ruling refers only to the remaining defendant, the City of New Haven.

hostile or abusive work environment," Plaintiff must also show that he "subjectively perceive[d] that environment to be abusive." *Alfano v. Costello,* 294 F.3d 365, 374 (2d. Cir. 2002) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The Second Circuit has held that alleged off-duty interactions may, in some cases, lead a reasonable fact-finder to infer that workplace conduct was motivated by discrimination. *See Howley v. Town of Stratford*, 217 F.3d 141, 156 (2d. Cir. 2000) (holding that a co-worker's off-duty tirade against a female employee could allow a factfinder to infer that "any harassment [the co-worker] directed at [the plaintiff] was gender-based."). In the instant case, D'Angelo's statement to Vereen provides context for D'Angelo's alleged comments in the workplace and Vereen's perception of those comments. If Plaintiff offers evidence in a manner that goes beyond this stated purpose, Defendant is free to object at trial.

Therefore, Defendant's first Motion *in Limine* [Dkt. 54] is DENIED.

### b. Motion to Preclude Testimony Regarding Various "Stray Remarks" [Dkt. 56]

Defendant moves to preclude testimony "encompassing 'stray remarks' made about other employees and outside of [Plaintiff's] presence on the ground that they are not relevant and, even if they were relevant, their probative value does not outweigh the significant danger of unfair prejudice." [Dkt. 56, at 1]. In the alternative, Defendant argues that these remarks are hearsay. [*Id.*] The alleged remarks include racially derogatory comments made to employees Nathaniel Roberts, Edward Cloud, Jerome Houser, and Ashish "Tony" Desai. [Dkt. 56-1, at 3]. Plaintiff contends that these remarks are relevant because they are evidence

of the existence of a hostile work environment. [Dkt. 71, at 5]. Plaintiff notes that "harassing incidents" can create a hostile work environment even if they occurred outside the plaintiff's presence and even if they were not directed at the plaintiff. [Dkt. 71, at 6].

This evidence is highly relevant and probative on the work environment at DPW. Whether racial slurs constitute a hostile work environment typically depends upon "the quantity, frequency, and severity" of the slurs. *Schwapp v. Town of Avon,* 118 F.3d 106, 110-11 (2d. Cir. 1997) (citing *Vore v. Indiana Bell Tel. Co.,* 32 F.3d 1161, 1164 (7th Cir. 1994)). These slurs must be "considered cumulatively in order to maintain a realistic view of the work environment." *Schwapp,* at 111 (internal quotations omitted). "The fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment." *Id. See also Torcasio v. New Canaan Board of Education,* 2017 U.S. Dist. LEXIS 39201, at *6-7 (D. Conn. 2017) (holding that harassment directed at individuals other than a plaintiff can still create a hostile work environment for the plaintiff). Requiring Plaintiff to present evidence only of comments that were directly made to him and not to comments directed at others is unreasonable – racist comments are often made to individuals other than the subject of the comments. Defendants have not shown sufficient prejudice to outweigh Plaintiff's right to present relevant evidence.

These statements are not hearsay for three reasons. First, the statements themselves are not hearsay because they are not being offered for the truth of the matter asserted in the statement. *See* Fed. R. Evid. 801(c)(2). Racist remarks are

by their nature objectionable because they are derogatory stereotypical character traits attributed indiscriminately to members of a race and thus not possibly true. Second, to the extent these remarks were made by a Defendant declarant or witness they are admissions by a party opponent under Federal Rule of Evidence 801(b). Finally, Plaintiff intends to call witnesses who will testify that they heard the remarks, obviating any claim of double hearsay evidence for the fact that Plaintiff was told about the comments. [Dkt. 71, at 6] ("It is anticipated in this case that Mr. Hauser, Mr. Roberts, and Mr. Desai will provide competent, non-hearsay evidence of the racist remarks."). These witnesses can testify that they heard the remarks and that they told Plaintiff about the remarks.

Therefore, Defendant's Motion *in Limine* to Preclude Testimony Regarding Various "Stray Remarks" [Dkt. 56] is DENIED.

### c. Motion to Preclude Facebook Posts Made By Coworkers [Dkt. 57]

Defendants seek to preclude evidence regarding Facebook posts made by Plaintiff's co-workers on the ground that "they were not properly preserved or captured, cannot be properly authenticated and are not relevant to the matter at issue." [Dkt. 57]. There are two posts at issue. The first, Plaintiff's Exhibit 10, appears to be a photograph of an African American man wearing a bra and lipstick shared by a Facebook user with the name "Honda Smith" on which a user named "Lynwood Dorsey" commented "Look at Darwood." [Dkt. 57-2, Exhibit A]. The second, Plaintiff's Exhibit 11, appears to show a photograph of a dark-skinned man smiling, on which photograph a user named "Lynwood Dorsey" commented "Two Public Works employees, I'm not saying no names, not

bringing me on no charges, Holla back at me Public Works Family." [Dkt. 57-3, Exhibit B]. Defendants argue that Plaintiff should not be allowed to produce this evidence because Plaintiff has not produced the complete Facebook posts and Plaintiff has not provided metadata to verify the posts. [Dkt. 57]. Defendant also argues that the evidence is inadmissible because it involves conduct that occurred outside of the workplace. [Dkt. 57-1, at 5]. As an initial matter, the Court addressed earlier the admissibility of conduct occurring outside of the workplace. *See supra* § IV.a. That reasoning applies here and will not be repeated.

Federal Rule of Evidence 901 provides criteria for authentication. The rule states:

> (a) In General. To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.

> (b) Examples. The following are examples only – not a complete list – of evidence that satisfies the requirement that it is what the proponent claims it is:

> . . .

> (4) Distinctive Characteristics and the Like. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Fed. R. Evid. 901. A party introducing evidence must provide "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *U.S. v. Vayner,* 769 F.3d 125, 129 (2d. Cir. 2014) (quoting *U.S. v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999)). This proof may be "direct or circumstantial." *U. S. v. Al-Moayed*, 545 F.3d 139, 172 (2d. Cir. 2008). One of the most common methods of authentication is through "the testimony of 'a witness with knowledge' that 'a

matter is what it is claimed to be.'" *U.S. v. Rommy,* 506 F.3d 108, 138 (2d. Cir. 2007); *Vayner*, 769 F.3d at 130. Authentication only concerns the *admissibility* of the evidence, not its *reliability*, which is a question for the jury. *U.S. v. Tropeano*, 252 F.3d 653, 661 (2d. Cir. 2001).

Defendant argues first that "it is not clear if this is a screenshot of Plaintiff's Facebook newsfeed, or if it is a screenshot of a Facebook profile maintained by "Jimmy Da Hatt, or one maintained by Lynwood Dorsey, or of a profile maintained by Honda Smith." [Dkt. 57-1, at 3]. Defendant further argues that it is impossible to determine exactly when the photograph was posted and by whom. [*Id.*]. Defendant claims that without this missing information, Plaintiff cannot authenticate the evidence.

The Court disagrees. Under Fed. R. Evid. 901(a), evidence may be admitted on a showing "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). When applying this rule to web sites, the "type and quantum" of evidence necessary for authentication depends on context. *Vayner*, 769 F.3d at 132 (internal quotations omitted). Whether that evidence is what Plaintiff claims is a matter for the jury. A reasonable jury could conclude from the distinctive characteristics of the Facebook posts – which include profiles matching the names of Plaintiff's coworkers, a comment using an apparent misspelling of Plaintiff's name, and a reference to the Department of Public Works – that the usernames in the screenshots do belong to profiles owned by Vereen's coworkers Honda Smith and Lynwood Dorsey. Plaintiff should be free to present this evidence to the jury, along with testimony from the

individuals allegedly depicted or other individuals familiar with the Facebook profiles in question, in order to authenticate the documents.

Furthermore, Defendant's relevance arguments are not persuasive. The Facebook posts are relevant for the same reason the remarks by D'Angelo, discussed above, are relevant. *See supra* § IV.a. These posts could reasonably be perceived as racially derogatory and thus indicative of possible racial bias among Vereen's coworkers and the comments could influence how Vereen is treated in the workplace. In fact, evidence of the Facebook posts is even more relevant than D'Angelo's alleged remarks because Dorsey was Vereen's supervisor.

Plaintiff has made a sufficient showing to authenticate this evidence and the evidence is relevant. Therefore, Defendant's Motion *in Limine* to Preclude Facebook Posts [Dkt. 57] is DENIED. This denial is without prejudice to Defendant renewing its objection if the evidence is introduced without proper foundation.

### d. Motion to Preclude Testimony Regarding Time-Barred Allegations Relating to Conduct that Occurred Prior to May 2, 2015 [Dkt. 58]

Defendant asserts that testimony regarding conduct that occurred prior to May 2, 2015 should be excluded because such testimony is time-barred. [Dkt. 58-1. At 4]. The conduct at issue includes: a) Plaintiff's alleged termination after he refused to pick up a cigarette that D'Angelo had dropped; b) Plaintiff's being passed over for a promotion in "late 2005"; c) D'Angelo's alleged statement to Plaintiff when Plaintiff went to D'Angelo's home to purchase a motorcycle. [*Id.*] Defendant argues that this evidence should be excluded because it occurred

more than 300 days prior to Plaintiff's filing of his complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO).

Plaintiff represents that he will not offer evidence about items (a) or (b).  [Dkt. 71, at 9].  Plaintiff does intend to offer evidence of D'Angelo's alleged statement in order to show D'Angelo's alleged racial bias.  [*Id.*]  Therefore, the Court only examines the evidence at issue in item (c).

Defendant is correct that complaints to the CHRO must be filed within 300 days of the conduct that is the subject of the complaint.  *See* 42 U.S.C. § 2000e-5(e)(1); *Johnson v. Connecticut*, 428 F.Supp.2d 87, 91-92 (D. Conn. 2006). However, the Second Circuit directs this Court to examine "the totality of the circumstances" relating to Plaintiff's claims regarding a hostile work environment.  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d. Cir. 2010); *Schwapp*, 118 F.3d at 111.  Furthermore, a plaintiff is not barred from using evidence of prior acts as background evidence for a timely claim.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d. Cir. 2001).  D'Angelo's alleged statements in item (c) are relevant to Plaintiff's claims for the reasons discussed in Section IV(a).  The statute of limitations may have run on these acts, but the acts are relevant to the question of Plaintiff's perception of D'Angelo's conduct and whether the conduct was so pervasive as to make the work environment hostile.

Therefore, the Motion is GRANTED IN PART as to items (a) and (b) and DENIED IN PART as to item (c).

### e. <u>Motion to Preclude Expert Testimony [Dkt. 59]</u>

Defendant seeks to preclude Plaintiff from entering the testimony of Plaintiff's expert witnesses, Dr. Wayne Warren and Dr. Heidi Lively, PhD, because they were designated on July 18, 2018, while the deadline to designate experts was December 30, 2017. [Dkt. 59-1, at 3]. The deadline for close of discovery, including depositions of expert witnesses, was May 1, 2018. [Dkt. 18]. Dr. Warren is Plaintiff's primary care physician, and Dr. Lively treated Plaintiff for depression and anxiety. [Dkt. 71, at 10]. Plaintiff argues that his discovery was belated because the medical professionals did not produce their reports until after the discovery deadline, and that he will be unable to sustain his claim for emotional distress without the testimony of these two witnesses. [*Id.* at 10-11].

Although Plaintiff did not designate the experts for trial until July 18, 2018, Plaintiff disclosed Dr. Warren and Dr. Lively on April 10, 2018, well before the end of discovery, in response to Defendants' interrogatory and production requests. [Dkt. 71-1, at 3]. Dr. Lively only began treating Plaintiff in March of 2018. [Dkt. 71, at 10]. Defendant had ample opportunity before trial to conduct discovery on the testimony of these witnesses but did not seek to depose them.

This case is readily distinguishable from *Greene v. City of Norwalk*, 2017 WL 600077 (D. Conn., 2017), cited by Defendant. *See* [Dkt. 59-1, at 3-4]. In *Greene*, the plaintiff sought to admit pattern and practice expert opinions based on a highly technical analysis of a large volume of data which had still not been disclosed on the eve of trial. Even though the Court found the plaintiff's delayed expert disclosure "inexcusable," the Court still held that excluding the plaintiff's

experts would be "needlessly harsh." *Greene,* at *5. In contrast, Defendant in the instant case has now had several months in which to conduct expert discovery, and Defendants have not articulated how they are prejudiced by the timing of Plaintiff's disclosure.

For the foregoing reasons, Defendant's motion to exclude Plaintiff's expert witnesses [Dkt. 59] is DENIED.

### f. Motion to Preclude Testimony Regarding Paragraph 26 of the Amended Complaint (Incidents While Plaintiff was on Medical Leave) [Dkt. 60]

This motion is GRANTED on consent. *See* [Dkt. 71, at 13].

### g. Motion to Preclude Admission of City of New Haven Affirmative Action Plan (Plaintiff's Ex. 38) [Dkt. 61]

Defendant moves to preclude the admission of the affirmative action plan of the New Haven Affirmative Action Committee from 1998, which has been marked Plaintiff's Exhibit 38. Defendant argues that the plan is not probative of Plaintiff's claims. [Dkt. 61-1, at 2]. Defendant explains that the document is 63 pages long, is highly technical and complex, cites numerous legal authorities, and contains some information that has not been updated since 1998. [*Id.*]. Plaintiff responds that the evidence is probative on the extent to which the city can be held liable for the hostile environment created by coworkers. [Dkt. 71, at 13]. Plaintiff asserts he will show that the City policies were inconsistent and confusing. [Dkt. 71, at 14]. Plaintiff states that he intends to cross-examine Defendant's witnesses about the document to illustrate their understanding of it. [*Id.* at 14-15].

This evidence satisfies the relevance standard under Fed. R. Evid. 401.  This is evidence of the standard of conduct which the City imposed on its employees.  The extent of deviation from that policy is indicative of the severity of the conduct at issue in Plaintiff's workplace.  Severity of conduct is a factor in determining whether the work environment was hostile.  *See Schwapp*, 118 F.3d at 111.  Defendant's concerns about the relevance of the plan go more towards weight than admissibility.  Defendant will be free to examine its witnesses about the plan in order to illustrate lack of probative value to the jury.

Therefore, Defendant's Motion to Preclude Admission of the City of New Haven Affirmative Action Plan (Plaintiff's Exhibit 38) is DENIED.

### h. Motion to Preclude Introduction of the EEOC Supervisory Liability Guidelines [Dkt. 62]

This motion is GRANTED on consent.  *See* [Dkt. 71, at 15].  This ruling does not preclude plaintiff from introducing the evidence, upon properly laid foundation, in Defendant's case-in-chief for cross-examination.

### i. Motion to Preclude Materials Relating to Other Claims for Discrimination [Dkt. 63]

Defendant seeks to preclude Plaintiff from offering into evidence Plaintiff's Exhibits 9, 21-29, 33, and 45-48, claiming they are not relevant and that, in any event, their probative value does not outweigh the danger of unfair prejudice.[3] [Dkt. 63].  These exhibits all allegedly contain documents relating to allegations of racial discrimination made by employees of the Department of Public Works

_____

[3] Due to an apparent error in filing the documents, the Court is unable to assess the contents of each individual exhibit.  This limitation is immaterial in light of the Court's ruling.

besides Plaintiff.  [Dkt. 63-1, at 4; *See* Dkt. 63, Defendant's Exhibits A-O].  A number of these exhibits pertain to alleged incidents that occurred before Plaintiff was hired.  Plaintiff concedes to Defendant's objections to Exhibits 9, 33, and 45-48. [Dkt. 71, at 15].  The Court turns to Plaintiff's Exhibits 21-29 (marked by Defendant as Exhibits B-K).

The parties agree that Plaintiff's Exhibits 21-29 relate to claims of racial discrimination filed by Department of Public Works employee Ashish "Tony" DeSai.  *See* [Dkt. 63-1, at 3, Dkt. 71 at 15-17.]  Evidence regarding DeSai's complaint and any response from the City, or lack thereof, is probative on whether the City is responsible for creating a hostile work environment.  Furthermore, if, as Plaintiff claims, Mr. DeSai will testify that he told Plaintiff about his experience, then Mr. DeSai's complaint provides evidence for Plaintiff's perception of a hostile work environment.  Without context and foundation for these exhibits, the Court is unable to establish the probative value at this juncture.  The Court will allow Plaintiff to attempt to introduce the evidence.  Defendant is free to renew its objection.

The motion is GRANTED on consent as to Exhibits 9, 33, 45-48.  *See* [Dkt. 71, at 15].  The motion is DENIED as to Exhibits 21-29.

## V.    Conclusion

For the foregoing reasons, the Court rules as follows on Plaintiff's motions:

1.    Motion to Preclude Defendant's Exhibits E-G, J-U, Q-Y, CC, GG-VV, and AAA-KKK is DENIED.

2.    Motion to Preclude Defendant's Exs. Z, AA, BB, and DD is GRANTED.

3.    Motion to Preclude Defendant's Exhibit FF (Letter Regarding Street Sweeper Training) is DENIED.

4.    Motion to Exclude Materials Related to Discipline Given to Other DPW Employees (Defendant's Exhibit LLL) is GRANTED.

5.    Motion to Exclude Cell Phone Video Footage (Defendant's Exhibit RRR) is GRANTED.

6.    Motion to Preclude Impeachment by Prior Specific Acts of Misconduct is DENIED.

The Court rules as follows on Defendant's motions:

1.    Motion to Preclude Testimony Regarding Paragraph 25 of the Amended Complaint [Dkt. 54] is DENIED.

2.    Motion to Preclude Testimony Regarding Various "Stray Remarks" [Dkt. 56] is DENIED.

3.    Motion to Preclude Alleged Facebook Posts Made By Co-Workers [Dkt. 57] is DENIED.

4.    Motion to Preclude Testimony Regarding Time-Barred Allegations Concerning Conduct that Occurred Before May 2, 2015 [Dkt. 58] is GRANTED in part and DENIED in part.

5.      Motion to Preclude Expert Testimony [Dkt. 59] is DENIED.

6.       Motion to Preclude Testimony Regarding Paragraph 26 of the Amended Complaint (Conduct While Plaintiff was on Medical Leave) [Dkt. 60] is GRANTED.

7.      Motion to Preclude the City of New Haven Affirmative Action Plan [Dkt. 61] is DENIED.

8.      Motion to Preclude the Equal Opportunity Employment Commission (EEOC) Supervisory Liability Guidelines [Dkt. 62] is GRANTED.

9.      Motion to Preclude Materials Related to Other Claims of Discrimination [Dkt. 63] is GRANTED in part and DENIED in part.


IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: November 20, 2018.